**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM A. BAUM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-421 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM ORDER</u>**

Defendant's Motion for Summary Judgment (Doc. 29) will be granted.

Plaintiff alleges that his current employer, the Social Security Administration (at times, "the SSA"), retaliated against him for filing EEO complaints based on disability and sex; and failed to accommodate his disabilities, ulcerative colitis and liver disease. *See generally* Compl. (Doc. 1) at ¶¶ 6, 52 & 60. Plaintiff's grievances relate to his having not been selected for a promotion to district manager, in his office in Butler, PA, and for assistant district manager in Ambridge, PA. *See generally id.* He also alleges that his subsequent demotion, from operations supervisor to claims representative, likewise was discriminatory. *See generally id.* at ¶¶ 47-49.

The Butler position came available when Plaintiff's former supervisor, George Ziecina, retired. Mr. Ziecina acted as a mentor to Plaintiff, and Plaintiff agrees that he fairly was characterized as Mr. Ziecina's "right hand man." Pl.'s Resp. to Def.'s Facts (Doc. 35) at ¶¶ 4, 11. Mr. Ziecina was an "old school type," who "ruffled a lot of feathers . . . in the [SSA's] management rank[s]." *Id.* at ¶ 4. For years, Mr. Ziecina's superiors consistently reported that he "made decisions sometimes too independently[,] . . . exercised poor judgment in communications

with employees . . . [and] didn't demonstrate a commitment to teamwork at the district management level." *Id.* at ¶ 5.

Plaintiff, and at least eight other employees, applied to replace Mr. Ziecina. *Id.* at ¶ 17. In documentation regarding the candidates, Mr. Ziecina's immediate supervisor, Amber Mundis – with whom Mr. Ziecina had "philosophical differences" – recommended against selecting Plaintiff, opining that he had failed to provide "honest and timely feedback," to "work collaboratively with other members of the management team," understand "upper management's role in the operations of a branch field office," "communicate sufficiently," "engage employees," "demonstrate[] leadership"; and that he "overshared information with employees" and "coached them in ways that [were in]appropriate." *Id.* at ¶ 22. The job ultimately went to a different candidate, John Garris, who held a higher position in the SSA, and who had prior experience as a district manager. *See id.* at ¶ 25. Unlike Plaintiff, Ms. Mundis characterized Mr. Garris as having "excellent communication skills," "engage[ment] in participatory management," information sharing and "handling [of] performance issues." *Id.* at ¶ 26.

Plaintiff later applied for the assistant district manager position in Ambridge, which was a 45-minute drive from his home; despite previously having transferred from an equidistant branch (Monroeville) to his current location, in Butler (where he lives), to lessen his commute and have more bathroom access. *See id.* at ¶ 3. Although Plaintiff more recently has asserted that he applied in Ambridge because his health conditions had improved, and for the purpose of career advancement, *see id.* at ¶ 42, at the time of his application, he confided in an email to Mr. Ziecina that he would only accept the position if the SSA granted him a 100% work-at-home accommodation; if the SSA refused, he would just "add that to [his] EEO case" and "forc[e]

2

them to make decisions that they'll have to defend later on"; and Plaintiff believed it unlikely that he would get the position because he was not in the "cool kids club." *Id.* at ¶¶ 39-40.

In not recommending Plaintiff for the Ambridge position, Mr. Garris – now Plaintiff's supervisor – joined the chorus regarding Plaintiff's challenges, reporting that he "did not effectively communicate with the staff[,] . . . did not provide opportunities and training . . . for the staff to learn the full scope of the job," and did not take "enough time or put enough effort into developing employees." *Id.* at ¶ 45.  Ms. Mundis echoed her prior concerns, *id.* at ¶ 47, and the successful candidate, again, had prior experience in the position and had been assessed as having significantly stronger interpersonal skills.  *See id.* at ¶¶ 49-50.

As for Plaintiff's later demotion, it is undisputed that he sent text messages, inappropriate in nature, to a subordinate.  *Id.* at ¶ 67 (summarizing texts characterized by recipient as "hit[ting] on her") *and id.* at ¶¶ 81-82 (Plaintiff texted SSA employees' sensitive or confidential information, including information related to those employees' requests for accommodation, medication and employment status).[1]

In opposing summary judgment, Plaintiff acknowledges having made some startlingly improvident statements, vis-à-vis his failure to enjoy career advancement at the SSA (perhaps because a number of them were made in writing, and uncovered through discovery). For example, Plaintiff does not dispute that, after learning that he was not selected for the Butler position, he told Ms. Mundis that, going forward, he would "make her life miserable"; that he would make her "life and the agency's life a living hell"; that the decision was "political";

---

[1]  Plaintiff has not disputed that he sent such texts, he merely testified that he does not recall having sent them.  *See id.*  Plaintiff's inability to remember does not create a genuine issue of material fact; and, Plaintiff *has* admitted that he exercised "poor judgment" in sending at least some of the texts.  *Id.* at ¶ 82.

and that he was not part of the "in crew," *i.e.*, those "folks that would blindly do whatever upper level management want[ed] them to do." *Id.* at ¶ 33.  Plaintiff echoed these sentiments in a contemporaneous email to Mr. Ziecina, stating that he "was going to make life miserable for [the decision-makers]"; that he "knew the decision was political"; that now he had "a purpose to focus all [his] energy on"; and that he planned to "bur[y] the people above [him] with paperwork and red tape" and "force the agency to waste resources on a situation [that] should have never been created but for their own incompetence." *Id.* at ¶34.

Regarding the Ambridge position, the Court already has recounted Plaintiff's perception that he was unlikely to succeed, and his motivation to add to his EEO charge and "forc[e management] to make decisions that they'[d] have to defend later on." *See* discussion *supra*.

Finally, as to his demotion – which became official on November 5, 2018 – he wrote on his office whiteboard:  "Remember, Remember the Fifth of November." *Id.* ¶ 90.  Although Plaintiff claims that he did not understand this statement to be threatening at the time, he now acknowledges that it might be so-interpreted. *Id.* at ¶ 97.

Although the Court cannot, and will not, construe inferences in the movant's favor, the similarities between Plaintiff's admitted statements and conduct and his superiors' assessments are too obvious to ignore.  *Compare* discussions immediately *supra* with assessments of Ms. Mundis and Mr. Garris (highlighting difficulties in working collaboratively with management, understanding upper management's role, demonstrating leadership, and noting Plaintiff's tendency to "overshare[] information with employees" and inability to effectively communicate); *see also* Pl.'s Resp. to Def.'s Facts at ¶ 14 (Mr. Roy, the other decision maker, noted Plaintiff's positive attributes, but characterized him as exercising "poor judgment in communicating with employees," "show[ing] resistance at times to . . .

[the] team approach to work," and voicing disagreement with "high level decisions" in "inappropriate ways"); *id.* at ¶ 32 (admitting that, when Ms. Mundis advised Plaintiff he was not selected for the Butler promotion, she told him "that she didn't agree with the philosophical approach that [Mr. Ziecina and Plaintiff] had, and that [Plaintiff] had a lot that [he] could learn from, and improve upon") *cf. also id.* at ¶¶ 4, 5 & 11 (Mr. Ziecina, who was Plaintiff's mentor and for whom Plaintiff acted as "right hand man," "ruffled a lot of feathers . . . in the [SSA's] management rank[s]" and "exercised poor judgment"). The Court need not rely on inferences of any kind, however, because Plaintiff has not done enough to refute Defendant's legitimate, non-discriminatory reasons for the adverse employment decisions.

There is not one whiff of evidence that Plaintiff was passed over, or demoted, because of a disability or in retaliation for having filed EEO charges. Nor has he meaningfully refuted any of the stated bases for Defendant's decisions. Plaintiff clings only to the suggestion that Ms. Mundis was, or became, aware of his having engaged in protected activity. Defendant's counsel has put forth compelling evidence and arguments to the contrary, *see* Def.'s Reply (Doc. 38). Either way, Plaintiff's evidence and inferences regarding Ms. Mundis's purported knowledge do not, as a matter of law, shed sufficient doubt on *any* of Defendant's legitimate, non-discriminatory reasons, let alone *all* of them.

Also telling are Plaintiff's repeated, contemporaneous statements that his non-selection was "political," or that he was not part of the "cool kids club." *See* discussions *supra*. These were the perceptions animating Plaintiff's objections, and such charges – even if proven – are not actionable. Jasmin v. N.J. Econ. Dev. Auth., 2020 WL 3411171, *12 (D. N.J. Jun. 22, 2020) ("[e]mployees are not insulted from personality conflicts, favoritism, nepotism, or, for that matter, from most inequities encountered in the workplace"); Falco v. Zimmer, 2016 WL

5

7175594, *4 (D. N.J. Dec. 7, 2016) ("office politics . . . do not lend inferential support to [a] retaliation claim"); *cf. also* <u>Garcia v. Newtown Tp.</u>, 2012 WL 1854136, *4 (3d Cir. May 22, 2012) ("personal animosities and petty office politics" are not actionable).[2]

Defendant is entitled to summary judgment, and its Motion (**Doc. 29**) is **GRANTED**.

IT IS SO ORDERED.


December 8, 2020                                        s/Cathy Bissoon_____
                                                       Cathy Bissoon
                                                       United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[2] To be clear, workplace in-grouping may be actionable if membership is shown to be contingent upon, or informed by, a person's falling within or outside of a protected class.  Plaintiff has not so alleged, nor is there any evidence to that effect.  *Cf.* discussion *supra* (noting Plaintiff's assertion that the "in crew" was comprised of "folks that would blindly do whatever upper level management want[ed] them to do").